## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

**JERRY READY,**                              **CASE NO.:   20-cv-1191**
        Plaintiff,
**v.**

**SEAVER FINISHING, INC.,**            **PLAINTIFF DEMANDS A JURY**
        Defendants.

Collin H. Nyeholt (P74132)
LAW OFFICES OF
CASEY D. CONKLIN, PLC
Attorney for the Plaintiff
4084 Okemos Road, Ste B
Okemos, MI  48864
(517) 522-2550
collin@caseydconklin.com

_____

## COMPLAINT and JURY DEMAND

_____

1

## JURISDICTION AND VENUE

1.   This is a claim for violation of the Title VII of the Civil Rights At of 1964, 42 USC § 2000e *et seq*, the Americans with Disabilities Act of 1990, 42 USC § 12101 *et seq*, as amended by the ADA Amendments Act of 2008, Pub L No 110-325, 122 Stat 3553 (2008), Michigan's Elliott-Larsen Civil Rights Act, MCL § 37.2101 *et seq*, and Michigan's Persons with Disabilities Civil Rights Act, MCL § 37.1101 *et seq*.

2.   Plaintiff JERRY READY is a permanent resident of Muskegon, Michigan. His principal place of employment, at the time of the events described in this Complaint, was at a facility owned and operated by the Defendant in Grand Haven, Michigan which is within the jurisdictional bounds of the Western District.

3.   Defendant SEAVER FINSISHING, INC. ("Defendant SEAVER") is a for-profit corporation organized under the laws of the State of Michigan that maintains a permanent business location and physical presence in, Grand Haven, Michigan.

4.   This claim stems from Defendants' actions towards Plaintiff during the course of his employment that occurred in Grand Haven.

5.   The Court may exercise *general in personem* jurisdiction over the Defendant by reason of its permanent business presence within the Western District.  In the alternative, the Court may exercise *specific jurisdiction* over the dispute because

the transaction or occurrence giving rise thereto resulted from Defendants' business activities within, and directed towards, the Western District of Michigan.

6.    The Court may exercise subject matter jurisdiction over the claims stemming from federal law pursuant to 28 USC § 1331. The Court may exercise pendent jurisdiction over the state law claims pursuant to 28 USC § 1367. The federal courts of the State of Michigan may entertain this Title VII action, pursuant to 42 USC § 2000e-5(f)(3).

7.    Venue is properly laid in this forum pursuant to 28 USC §§ 1391(b)(1) and (b)(2), as well as 42 USC § 2000e-5(f)(3).

## ALLEGATIONS

8.    Defendant SEAVER FINISHING, INC. is an industrial metal finishing company that provides powder coating and electric coating services (or "e-coating") for industrial applications.

9.    Plaintiff JERRY READY began his employment with Defendant Seaver's E-Coat division in South Haven on or about October 23, 2017 when he was assigned to the company through a temporary staffing company called Workforce. He was assigned to the pre-rack hanging department.

10.    Plaintiff suffers from Anxiety, Depression, Manic-Depression, PTSD, ADHD, Bipolar, and cognitive impairment which affect several of his major life

activities, including learning, working with others, and moods. He has been treated by Pine Rest. At the time of the events described herein, he was prescribed medication to manage his condition. He has found that, with his medication, working anything over eight hours is a struggle for him. In the past, his doctors have limited him to 30 hours per week.

11.    Plaintiff has also worked with Michigan Rehabilitation Services ("Michigan Rehabilitation.") Michigan Rehabilitation is a bureau of the Michigan Department of Labor and Economic Opportunity. It employs a network of vocational rehabilitation professionals and provide services to business including "talent development and reasonable accommodation services," "employee retention," and "ADA consultation.[1]" Basically, Michigan Rehabilitation is a State of Michigan entity that tells businesses what accommodations they should provide disabled people they employ.

12.    Defendant hired Plaintiff as a full time Quality Inspector / Packager on or about January 1, 2018. This job ran in eight hour shifts. His immediate supervisor on this line was Seaver's Group Lead, Mr. Tommy Hurt.

13.    Approximately two weeks after he started, Plaintiff told Mr. Hurt about his disabilities. He stated that he needed to go to his car to get his medication and

---

[1] https://www.michigan.gov/leo/0,5863,7-336-94422_97702_101223---,00.html

4

informed Hurt that sometimes, when he doesn't take his medication, it causes him to feel overtired.

14.    Shortly thereafter, Plaintiff discussed his disability, and needed accommodations for same, with Group Lead Tommy Hurt and Second Shift Supervisor Marvin Flowers. Plaintiff advised Mr. Hurt that he worked with Michigan Rehabilitation and offered to one of its advocates them discuss his disability and necessary accommodations. Mr. Hurt responded that he was familiar with Michigan Rehabilitation and it was not necessary to have them formally involved. Plaintiff, Mr. Flowers, and Mr. Hurt agreed that he could take five minute breaks if he began to feel overwhelmed. Seavers runs five lines with different tasks and Plaintiff felt that two of them involved tasks that would be overwhelming to him. He, Hurt, and Flowers agreed also that he would not be assigned to the two problematic lines. Plaintiff would work primarily on the line operated by Group Lead Hurt.

15.    Plaintiff met a co-worker named Jazmine Evans who was also assigned to Tommy Hurt's line while he was. The two developed a jocular, familiar relationship while working together. Ms. Evans would frequently use raunchy language and make inappropriate gestures towards Plaintiff in a playful manner. She would frequently and freely refer in crass terms to performing felatio ("sucking dick," as she put it) and make dirty hand gestures ("flipping people off").

5

Plaintiff would respond to her in the same playful way. The work relationship spilled over into a personal friendship. Ms. Evans began confiding in Plaintiff about problems she was having at home with her boyfriend. Plaintiff and Ms. Evans eventually began corresponding on Facebook and spent some time together off site.

16.    In or about February of March of 2018, Plaintiff was promoted from the Quality Inspector / Packager line and began training as a lab technician. This position came with a raise in pay, and carried higher prestige in the organization.

17.    At or around this point in time, Plaintiff was roommates with another of Seaver's employees named Domonique Stevenson. Plaintiff had taken possession of an old flat screen television which Domonique thought was broken. Plaintiff was able to fix it. He offered to "throw a few dollars" at Domonique for the TV. A dispute developed between the two of them pertaining to ownership of, and the correct amount for the TV.

18.    On April 19, 2018 the TV dispute spilled over into the workplace. Ms. Stevenson came to Plaintiff's office and began yelling at him, loudly, about television.

19.    Plaintiff was deeply disturbed by the incident with Ms. Stevenson and reported it to Defendant Seaver's management.

20.    Defendant Seaver's management investigated the incident between Plaintiff and Ms. Stevenson.

21.    After Plaintiff reported the incident with Stevenson, he discussed his complaint with one Seaver's Lead Quality manager named Brandon. Brandon, at one point, asked Plaintiff what they could do to "sweep this under the rug" referring to the incident. Brandon also threatened Plaintiff's job if he would not withdraw the complaint, asking "what are you going to do when you get fired after you pursue this?"

22.    The day after Plaintiff reported the incident, he was called to a meeting with HR Manager Kathy Meekhoff, Andy Pedeja, and Marvin Flowers. During this meeting, Plaintiff was asked questions that Plaintiff found objectionable.

23.    The day after this, Plaintiff was demoted from his position in the lab and returned to the line.

24.    Defendant Seaver has claimed that Stevenson was "terminated" as a result thereof. But this was false. Ms. Stevenson worked for Defendant Seaver for two weeks after this incident and was, eventually, terminated for attendance violations when she simply stopped coming to work. Her termination had absolutely *nothing* to do with the at-work harassment she engaged in towards Plaintiff.

25.     Defendant Seaver's management, in fact, did *nothing* to discipline Domonique Stevenson for her at-work harassment towards Plaintiff. He had to hide out in his office and try to avoid her.

26.     On or about May 1, 2018 Plaintiff was removed from the lab tech position and re-assigned to a second-shift position on the line. This was not a return to Tommy Hurt's line, but rather a different line under Second Shift Supervisor Marvin Flowers. This new position required him to work ten to twelve hour shifts.

27.     The new twelve hour shifts were a problem for Plaintiff because, due to his disabilities, he has significant difficulty concentrating for more than eight. He also found the specific tasks assigned on this line to be problematic, given the demands of same. He began to feel overwhelmed and it caused him, at one point, to leave the facility in tears.

28.     Plaintiff discussed his disability, and the resulting difficulties he was having with his assignment, with Defendant's Human Resources Manager, Kathy Meekhof. Plaintiff requested assignment to a different line, such as Tommy Hurt's, where he would work only eight hour shifts as an accommodation. Despite being fully aware of Plaintiff's disability, and the problems the position was causing him because of his disability, Ms. Meekhof refused to approve his request for transfer. She offered no accommodations at all.

29.    Plaintiff discussed his disability, and the difficulties he was having with the 12-hour shift, with Marvin Flowers, the Second Shift Supervisor. Mr. Flowers also told him that he would not grant the transfer to a different line or a different shift. Plaintiff told him he may proceed to have his disability advocate from Michigan Rehabilitation Services get involved.

30.    Plaintiff proceeded to contact Patti Melvin, a disability advocate from Michigan Rehabilitation. Plaintiff informed Ms. Melvin about the circumstances at Seaver, his disability-related difficulties, and Seaver's failure and refusal to accommodate same. Plaintiff asked Ms. Melvin to intervene on his behalf and discuss his need for accommodations. She did so.

31.    In or about mid-May, 2015 Plaintiff met Ms. Melvin at her office. The two proceeded to call Seaver to discuss circumstances. The two were connected with Andy Bereza, Operations Manager for Defendant Seaver. At one point, Mr. Bereza stated that he questioned whether Plaintiff even *had* a disability and stated that, in his mind, he viewed it as a "joke" which he laughed about. The conversation between Mr. Bereza and Ms. Melvin became contentious, the two frequently talking over each other. Eventually, Mr. Bereza relented and agreed to assign Plaintiff back to an eight-hour line position under Tommy Hurt.

9

32.    After Michigan Rehabilitation intervened on Ready's behalf, Defendant Seaver's managers began searching for a suitable pretext to terminate his employment.

33.    After Plaintiff's re-assignment, Tommy Hurt began hyper-scrutinizing Plaintiff's performance on the line. Hurt later stated that "Jerry Ready started showing signs of laziness" and offered his opinion that "it had nothing to do with his medication." It should be noted that Mr. Hurt is not a physician and therefore lacks the ability to offer a medical opinion as to whether symptoms he observed are related to Ready's medication or not. His assertion that Plaintiff was "lazy" because of the symptoms he observed demonstrates, at worst, animus towards his disability or, at best, animus towards having to accommodate same.

34.    Mr. Hurt also later asserted, falsely, that Ready had "become extremely obsesses with Jazman [*sic*] Evans to the point that he was losing control."

35.    Mr. Hurt's written statement, from which the aforesaid misstatements are drawn, will be produced in Plaintiff's production set as bates numbered document JR0040.

36.    On June 19, 2018 Mr. Hurt observed Mr. Ready make a rude gesture to Jazmine Evans. Mr. Ready "flipped her off" as they often did in the playful manner between them.

37.    Mr. Hurt instructed Ms. Evans to report the incident to Marvin Flowers, the Second Shift supervisor.

38.    Mr. Flowers proceeded to instruct Jazmine Evans to write a written statement against Mr. Ready.

39.    On June 20, 2018 Ms. Evans produced a written statement as Mr. Flowers instructed. The statement Flowers procured from Ms. Evans stated that Ready "harassed me on facebook and I've blocked him," "called my name and when I looked up he had his middle finger up towards me" and, supposedly, "after that happened he sent another co-worker to tell me he called me a mother f***er." She stated she found Plaintiff "irritating and uncomfortable to be around and to work with" because of this.

40.    Ms. Evans' statement will be produced in Plaintiff's production set as bates numbered document JR0039.

41.    Defendant Seaver terminated Plaintiff from his position on June 20, 2018.

42.    Defendant Seaver's stated reason for Plaintiff's termination was supposedly inappropriate at-work harassment of Ms. Evans.

43.    Plaintiff timely filed a charge of discrimination with the Michigan Department of Civil Rights alleging disability discrimination, sex discrimination, and retaliation. The MDCR assigned the matter investigation number 491540. Pursuant to the MDCR's work-sharing agreement with the EEOC, the charge was

11

also submitted to the EEOC and it was assigned complaint number 23A-2019-00077C. The EEOC issued its right-to-sue letter to Plaintiff on October 2, 2020.

**COUNT 1 – SEX DISCRIMINATION**
***In Violation of Title VII of the Civil Rights Act of 1964***
***42 USC § 2000e et seq***

44.  Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

45.  Title VII of the Civil Rights Act prohibits, *inter alia*, discrimination based upon sex.  42 USC § 2000e. A plaintiff may prevail upon a claim of discrimination in violation of Title VII if he can show (1) that he or she was in a protected class; (2) that he or she was qualified for the job that she held during the time in question; (3) that he or she suffered an adverse employment action; and (4) that he or she was treated differently than similarly-situated individuals who were not members of his protected class. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 US 792, 802-3 (1973).

46.  Plaintiff was a member of a protected class by reason of his sex, male.

47.  Plaintiff was qualified for his position. This is demonstrated by the facts that

    a.  Defendant hired Plaintiff as a full time line worker position in January of 2018 after using him as a temp worker prior to that date,

12

b. Defendants retained Plaintiff to the line work position from January until his promotion to the lab position in or about February or March, and then *returned* him to a line position in May, and

c. Defendants' stated reason for Plaintiff's termination was his alleged misconduct at work, and not his failure to adequately perform his job duties.

48. Plaintiff suffered an adverse employment action. To wit, he was terminated from his position on June 20, 2018.

49. Plaintiff was treated differently than similarly situated individuals who were not members of his protected class. To wit,

a. Plaintiff was similarly situated to Monique Stevenson and Jazmine Evans. All three of them were line workers employed by Defendant Seavers. They held similar positions in terms of duties and pay scale. They all occupied similar levels of power within the organizational hierarchy in that neither of them were managerial level employees.

b. Monique Stevenson, a female, loudly accosted Plaintiff at work regarding an outside of work dispute between them. He reported this to management. Management nevertheless permitted Stevenson to continue to work for the company for a period of two weeks thereafter, despite the fact that Plaintiff felt continually threatened by her presence at the job

13

site due to her behavior towards him. Management, in fact, demoted Plaintiff after he reported the incident.

c. Plaintiff, a male, was accused of an at-work altercation with Jazmine Evans. He was terminated *the next day*. Jazmine, a female, was not demoted for having reported Plaintiff's supposed behavior.

d. Plaintiff was demoted and eventually terminated for similar behavior that was tolerated from similarly situated female employees.

50. During the MDCR's investigation, Defendant Seaver falsely asserted that Monique Stevenson was terminated in response to Plaintiff's complaint against her when, in fact, she was not. This knowing misstatement on its part demonstrates consciousness of unlawful discrimination.

51. Plaintiff has suffered damages from his discriminatory termination including:

a. Lost back pay and benefits,

b. Lost front pay and benefits,

c. Emotional pain and distress,

d. Attorney's fees in opposing same.

52. Plaintiff is also entitled to an award of compensatory damages, and punitive damages, by reason of the Defendants' unlawful conduct.

14

## COUNT 2 – SEX DISCRIMINATION
### *In Violation of Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq*

53.    Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

54.    Michigan's Elliott-Larsen Civil Rights Act (the "ELCRA") provides, in pertinent part, that "an employer shall not … [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of … sex [.]"  MCL 37.2202.

55.    The ELCRA is largely co-extensive to Title VII of the Civil Rights Act. *Elezovic v. Ford Motor Company*, 472 Mich. 408 (2005).

56.    Plaintiff, therefore, will incorporate by reference the factual statements he has made in support of his Title VII sex discrimination claim as if fully restated herein and in support of his ELCRA sex discrimination claim.

57.  Plaintiff has suffered damages including:

    a.  Lost back pay and benefits,

    b.  Lost front pay and benefits,

    c.  Emotional pain and distress,

    d.  Attorney's fees in opposing same.

## COUNT 3 – DISABILITY DISCRIMINATION
### *In Violation of the Americans with Disabilities Act,*
### *42 USC § 12101 et seq, as amended*

58. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

59. Defendant employed 15 or more employees, including part time employees, for each workday in each of 20 or more calendar weeks in the current or proceeding year of the date of Plaintiff's termination and is, therefore, a "covered employer" as that term is defined by 42 USC § 12111(5)(A) and is a "covered entity" as that term is used in42 USC § 12111(2).

60. At the time of the events described in this Complaint, Plaintiff PTSD, ADHD, Bipolar, and cognitive impairment.

61. These conditions affected, and continue to affect, several of Plaintiff's major life activities, including learning, working with others, and moods.

62. Managers at Defendant Seaver were aware of Plaintiff's disabilities.

63. Plaintiff is a qualified individual with a disability as that term is defined by 42 USC 12102(1).

64. Plaintiff possessed the appropriate educational background, employment experience, skills, and other requirements for the position he occupied at Defendant Seaver.

65.  Plaintiff, in fact, satisfactorily performed and even excelled in this position prior to his termination.

66.  Plaintiff could perform the essential functions of his position at Seaver.  He demonstrated this fact by performing the work successfully for three years, without disciplinary write-up or performance deficiency, prior to his termination.

67.  Plaintiff was subjected to the following adverse employment actions related to his disability:

    a.  From the period of time between his demotion from the lab position, to the State of Michigan's intervention with Seaver's management, Defendants failed and refused to provide Plaintiff with necessary job accommodations, despite his requests to provide him with same.

    b.  After Michigan Rehabilitation's representative spoke to Defendant's management on Plaintiff's behalf, Defendant proceeded to terminate Plaintiff for a pretextual reason.

68.  Plaintiff has suffered the following damages as a result of the Defendants' violation of his rights:

    a.  Lost back pay and benefits,

    b.  Lost front pay and benefits,

    c.  Emotional pain and distress,

    d.  Attorney's fees in opposing same.

17

69. Plaintiff is also entitled to compensatory and punitive damages by reason of the Defendants' violation of the Americans with Disabilities Act.

## COUNT 4 – DISABILITY DISCRIMINATION
### *In Violation of the Michigan Persons with Disabilities Civil Rights Act, MCL § 37.1101 et seq*

70. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

71. Michigan's Persons with Disabilities Civil Rights Act (the "PWDCRA") prohibits employers from discriminating against a qualified employee with disability and is largely coextensive with the Americans with Disabilities Act. The PWDCRA, like the ELCRA, is largely coextensive with the ADA. *Elezovic, supra.*

72. As stated previously, Defendant Seaver has engaged in a pattern of discrimination towards him based, at least in part, on his disability.

73. As stated previously, Defendant refused Plaintiff's reasonable request for disability accommodations.

74. As noted, Defendant terminated Plaintiff's employment for a pretextual reason, rather than provide him with requested disability accommodations.

75. Plaintiff has suffered the following damages as a result of the Defendants' violation of his rights:

18

a. Lost back pay and benefits,

b. Lost front pay and benefits,

c. Emotional pain and distress,

d. Attorney's fees in opposing same.

**COUNT 5 –RETALIATION**
*In Violation of the Americans with Disabilities Act 42 USC § 12101 et seq, as amended*

76. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

77. The ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."  Further, the ADA makes it unlawful to "coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]."  42 USC § 12203(b).

78. Plaintiff engaged in activity protected by the ADA when he:

a. Requested accommodations for his disability in or about May of 2018,

b. Asked his disability advocate from Michigan Rehabilitation to intervene on his behalf when Defendant Seaver failed and refused to provide his necessary accommodations.

79. The Defendant retaliated against Plaintiff for the protected conduct above by

a. Hyper-scrutinizing his work after Michigan Rehabilitation intervened on his behalf,

b. Made false allegations against him after his complaint to Michigan Rehabilitation, and

c. Terminating his employment based upon same.

80. Plaintiff has suffered the following damages as a result of the Defendants' violation of his rights:

a. Lost back pay and benefits,

b. Lost front pay and benefits,

c. Emotional pain and distress,

d. Attorney's fees in opposing same.

## COUNT 6 –RETALIATION
### In Violation of the Michigan Persons with Disabilities Civil Rights Act, MCL § 37.1101 et seq

81. Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

20

82. Michigan's PWDCRA prohibits an employer from retaliating or otherwise discriminating against an employee who opposes a violation of the Act, or participates in an investigation into violation of the same.

83. Plaintiff engaged in activity protected by the ADA when he:

    a. Requested accommodations for his disability in or about May of 2018,

    b. Asked his disability advocate from Michigan Rehabilitation to intervene on his behalf when Defendant Seaver failed and refused to provide his necessary accommodations.

84. The Defendant retaliated against Plaintiff for the protected conduct above by

    a. Hyper-scrutinizing his work after Michigan Rehabilitation intervened on his behalf,

    b. Made false allegations against him after his complaint to Michigan Rehabilitation, and

    c. Terminating his employment based upon same.

85. Plaintiff has suffered the following damages as a result of the Defendants' violation of his rights:

    a. Lost back pay and benefits,

    b. Lost front pay and benefits,

    c. Emotional pain and distress, and

    d. Attorney's fees in opposing same.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief from this Honorable Court:

1. ECONOMIC DAMAGES including, but not necessarily limited to, back pay and benefits and front pay and benefits, lost by Plaintiff resulting from his wrongful termination.

2. Such other COMPENSATORY damages as may be appropriate to compensate Plaintiff for Defendant's unlawful conduct, to the statutory maximum of $300,000.

3. PUNITIVE damages, in whatever amount the Court should deem appropriate, pursuant to 42 USC § 1981a(b)(3).

4. ATTORNEY'S FEES, in an amount determined reasonable by the Court, so wrongfully incurred in order to remedy the violation of his rights described herein, pursuant to the various statutes identified herein,

5. Pre and post judgment interest at the appropriate statutory rate, and

6. Such other relief as this Court may deem just and appropriate in law or in equity.

## PLAINTIFF DEMANDS A JURY

Respectfully Submitted,

Dated: 12/11/2020

__/s/ Collin H. Nyeholt_____
Collin H. Nyeholt,
Attorney for the Plaintiff

22